UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

JENNY BOWELL, *et al.*,

     Plaintiffs,                       Case No. 3:16-cv-52

vs.

MOWERY CONSTRUCTION, INC, *et al.*,     District Judge Thomas M. Rose
                                      Magistrate Judge Michael J. Newman

     Defendants.

---

**REPORT AND RECOMMENDATION[1] THAT DEFENDANT HAAS CABINET COMPANY, INC.'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS (DOC. 10) BE GRANTED IN PART AND DENIED IN PART AS SET FORTH HEREIN**

**\*\*\***

**ORDER AND ENTRY DENYING WITHOUT PREJUDICE PLAINTIFFS' REQUEST TO AMEND THE PLEADINGS**

---

     This civil case is before the Court on the Rule 12(c) motion filed by Defendant Haas Cabinet Company, Inc. ("Haas"). Doc. 10. Plaintiffs Jenny and Paul Bowell ("the Bowells") filed a memorandum in opposition. Doc. 11. Thereafter, Hass filed a reply. Doc. 12. The undersigned has carefully considered all of the foregoing, and Hass's Rule 12(c) motion is now ripe for decision.

**I.**

     Hass moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). The standard for reviewing a Rule 12(c) motion is the same standard employed for reviewing a Rule 12(b)(6) motion to dismiss. *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008). A motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

sufficiency of the complaint and permits dismissal for "failure to state a claim upon which relief can be granted."

To show grounds for relief, Fed. R. Civ. P. 8(a)(2) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (citing *Twombly*, 550 U.S. at 555). In determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*.

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. In addition to well-pleaded allegations in the complaint, the Court may also consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint," as well as documents attached to a defendant's motion to dismiss that are important to the plaintiff's claims or if referred to in the complaint. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (citation omitted); *Composite Tech., L.L.C. v. Inoplast Composites S.A. de C.V.*, 925 F. Supp. 2d 868, 873 (S.D. Ohio 2013).

A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[W]here the well-pleaded facts do not

2

permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id*. at 679 (alteration in original) (citing Fed. R. Civ. P. 8(a)(2)).

## II.

This case arises out of a remodeling project inside the Bowells' Centerville, Ohio home in which the Bowells contracted[2] with Defendants Mowery Construction, Inc. ("Mowery Construction") and Jason Mowery ("Mowery") to perform certain work. Doc. 3 at PageID 63. The Bowells were familiar with Mowery and Mowery Construction because they had previously completed a remodeling project for the Bowells -- a project for which the Bowells were pleased with Mowery Construction's quality of work, workmanship and materials. *Id*. at PageID 61.

The remodeling project at issue in this case began in the summer of 2014 when the Bowells contacted Mowery to discuss the project. *Id*. at 62. Specifically, the Bowells sought to remodel their dining room, kitchen, laundry room, and connecting hallway. *Id*. A significant part of the remodel concerned the selection and installation of new cabinetry throughout each room to replace then-existing solid wood, custom-made cherry cabinets. *Id*. While the Bowells wanted Mowery Construction to install the same cabinets that they installed in their master bathroom during the previous remodeling project, that company was no longer in business. *Id*. The Bowells, not knowing what other cabinet options were available, relied on Mowery Construction and Mowery's judgment as to which cabinets would be as aesthetically pleasing and as high in quality and grade as those installed during the previous remodel. *Id*.

---

[2] The Court notes that Plaintiffs, in their complaint, reference the contract between the "parties" and assert that a true and accurate copy of said contract "is attached hereto as Exhibit 1." Doc. 3 at PageID 63. However, there is no exhibit appended to Plaintiffs' complaint. Recognizing that this case was removed from the Montgomery County, Ohio Court of Common Pleas, the undersigned reviewed that court's online docket for the referenced attachment. *See Bowell v. Mowery Constr., Inc.*, Case No. 2016 CV 318 (Mont. C.C.P. Jan. 19, 2016). The referenced attachment, however, was also not appended to the complaint as originally filed in state court. *See id*. Accordingly, the Court has not been afforded the opportunity to review the contract in question.

Subsequently, Mowery provided the Bowells with an estimate for Haas cabinets. *Id.* Mowery allegedly assured the Bowells that Haas cabinets were as good a quality as they installed during the previous remodel. *Id.* Ultimately, the parties agreed that the remodeling project, including the furnishing and installation of Haas cabinets, would be completed for a total cost of $67,187.00 and the Bowells entered into a written contract with Mowery Construction and Mowery on August 20, 2014. *Id.* at PageID 63-64. Over $35,000.00 of the total contract price was directly attributable to Mowery removing the old cabinets, as well as furnishing and installing the new Haas cabinets. *Id.* at PageID 64.

There is no dispute that Mowery performed a great deal of the work called for under the contract. *Id.* at PageID 66. However, the Bowells contend that Mowery and Mowery Construction's work is substantially deficient and unworkmanlike in numerous ways. *Id.* The Bowells also allege that the Haas cabinets were defective in various ways, including, *inter alia*, that some cabinets had raised wood grain and/or granules which were stained and/or clear coated over; some were cracked; some had uneven and/or incorrectly aligned joints; some were scratched and/or gashed; and some were improperly stained and/or clear coated. *Id.* at PageID 67. Further, shortly after installation, the Bowells contend that additional defects with the Haas cabinetry became apparent, including, *inter alia*: finish wearing off of a drawer and cabinet corners; finish wearing off on the frame of one or more cabinets; one or more shelves bowing; and uneven and seemingly random film-like defects appearing in the clear coat on two or more cabinets. *Id.* With regard to Haas, the Bowells allege that it warrantied the cabinets, including a warranty against defects, and that Haas subsequently failed to honor such warranties. *See* doc. 3 at PageID 69.

On January 19, 2016, the Bowells filed this civil action in the Montgomery County, Ohio Court of Common Pleas against Haas, Mowery, and Mowery Construction. Doc. 3 at PageID

4

59. In total, the Bowells allege damages in an amount "greatly exceed[ing] the amount of the [$67,187.00] contract price[.]" *Id.* at PageID 18. This case was subsequently timely and properly removed to this Court on the basis of federal question jurisdiction arising from the Bowells' claims under the Magnuson-Moss Warranty Act,[3] 15 U.S.C. § 2301, *et seq. See* doc. 1 at PageID 1. In total, the Bowells allege the following claims against all Defendants: (1) violations of the Ohio Consumer Sales Practices Act ("OCSPA"); (2) violations of Ohio Rev. Code § 4722.01, *et seq.*; (3) violations of Ohio Admin. Code § 109:4-3-05; (4) breach of contract; (5) violations of the Magnuson-Moss Warranty Act; and (6) fraud and deceit. *See* doc. 3 at PageID 70-78. Haas, having filed an answer, now moves for relief under Rule 12(c).

## III.

Haas, in its Rule 12(c) motion, argues that the Bowells fail to state a claim upon which relief can be granted in asserting that Haas: (1) violated the Ohio Consumer Sales Practices Act ("OCSPA"); (2) violated Ohio Rev. Code § 4722.01; (3) violated Ohio Admin. Code § 109:4-3-05; (4) breached a contract; and (5) committed fraud and deceit. Doc. 10. In response, the Bowells clarify that they do not intend to pursue claims against Haas for violations of Ohio Rev. Code § 4722.01, Ohio Admin. Code § 109:4-3-05, or for fraud and deceit. Doc. 11 at PageID 177. Insofar as the Bowells' allegations could reasonably be construed to assert claims against Haas under Ohio Rev. Code § 4722.01, Ohio Admin. Code § 109:4-3-05, and/or for fraud and deceit, such claims should be dismissed in light of the Bowells' clarification in this regard. The Court will address Haas's remaining arguments in turn.

---

[3] The Magnuson-Moss Warranty Act provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief[.]" 15 U.S.C. § 2310(d)(1). Such action may be brought in a "district court of the United States" so long as the amount in controversy exceeds $50,000. *See* 15 U.S.C. § 2310(d).

**A.     The Ohio Consumer Sales Practices Act**

Haas argues that the Bowells' OCSPA claims must be dismissed because they fail to sufficiently plead facts showing: (1) it is a "supplier"; (2) that it was party to a "consumer transaction"; and (3) the presence of an unfair, deceptive or unconscionable act.  *See* doc. 10 at PageID 123-27; doc. 12 at PageID 297-99.[4]

The OCSPA prohibits a "supplier" from committing either "an unfair or deceptive act or practice" or an "unconscionable act or practice in connection with a consumer transaction." Ohio Rev. Code §§ 1345.02(A) and 1345.03(A).   These statutes prohibit such acts or practices by "suppliers" regardless of whether they occur "before, during, or after the [consumer] transaction."  *Id.*   Notably, "[b]ecause the [O]CSPA 'is a remedial law which is designed to compensate for traditional consumer remedies,' the Act must be liberally construed."  *Risner v. Regal Marine Indus., Inc.*, No. 1:11-CV-00191, 2013 WL 1758876, at *15 (S.D. Ohio Apr. 24, 2013) (citing *Einhorn v. Ford Motor Co.*, 548 N.E.2d 933, 935 (Ohio 1990)).

The OCSPA defines a "supplier" as "a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not the person deals directly with the consumer."  Ohio Rev. Code § 1345.01(C).  The OCSPA defines a "consumer transaction" as "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things."  Ohio Rev. Code § 1345.01(A).  The term "individual," as used in the OCSPA, means "a natural

---

[4] In its Rule 12(c) motion, Haas did not argue that it is not a "supplier" as defined in the OCSPA, although Haas sets forth an extensive argument in that regard in its reply memorandum.  *See* doc. 12 at PageID 297-99.  Generally, "[a] movant cannot raise new issues for the first time in a reply brief because consideration of such issues 'deprives the nonmoving party of its opportunity to address the new arguments.'"  *Clark v. Shop24 Glob., LLC*, 77 F. Supp. 3d 660, 677 (S.D. Ohio 2015).  Although not originally advanced by Haas in its motion, the Bowells nevertheless construed Haas's motion to argue that "it was not a supplier under the [O]CSPA."  *See* doc. 11 at PageID 175.  Because the Bowells fully addressed this argument in their memorandum in opposition, the undersigned considers it here.

person." *See Watkins & Son Pet Supplies v. Iams Co.*, 107 F. Supp. 2d 883, 893 (S.D. Ohio 1999), *aff'd*, 254 F.3d 607 (6th Cir. 2001); *City of Findlay v. Hotels.com, L.P.*, 441 F. Supp. 2d 855, 862 (N.D. Ohio 2006).

### 1. "Supplier"

Haas argues that it is not a "supplier" because it is in the business of selling its cabinets solely to distributors and, just as here, never has direct contact with the end "consumer" at the time the "consumer" purchases the product. Doc. 12 at PageID 298. Liberally construing the OCSPA, as the Court is required to do, the undersigned concludes that Haas is a "supplier," at least insofar as it allegedly provided warranties to end "consumers" on its cabinets. *See Miner v. Jayco, Inc.*, No. F-99-001, 1999 WL 651945, at *6 (Ohio Ct. App. Aug. 27, 1999) (finding a manufacturer to be a "supplier" where it provided a "warranty as part of the consumer transaction at issue"). Further, because one can be a "supplier" under the OCSPA without any direct contact with the individual consumer, *see* Ohio Rev. Code § 1345.01(C), the "lack of contact between [the Bowells] and Haas" in this case, *see* doc. 12 at PageID 299, is of little relevance at this stage of the litigation.

### 2. "Consumer Transaction"

Next, Haas argues that, because a "consumer transaction" requires some dealing with a "natural person," and because it did not sell the cabinets to the Bowells directly, no OCSPA claims can be asserted against it because it was not a party to the "consumer transaction." *See* doc. 10 at PageID 124-25. In support of their contention, Haas cites *Flex Homes, Inc. v. Ritz-Craft Corp. of Mich., Inc.*, 721 F. Supp. 2d 663, 674-75 (N.D. Ohio 2010), a case where the court dismissed OCSPA claims because defendant was not a party to any transaction with plaintiffs. *Id.* Some courts have reached similar conclusions, although those cases "present[] little in the way of analysis." *Smith v. Smith & Nephew, Inc.*, 5 F. Supp.2d 930, 932 (S.D. Ohio 2014)

(citing *Reeves v. PharmaJet, Inc.*, 846 F. Supp. 2d 791, 798 n.2 (N.D. Ohio 2012); *Williams v. Boston Scientific Corp.*, No. 3:12cv1080, 2013 WL 1284185, at *6 (N.D. Ohio Mar. 27, 2013)). Other courts have rejected such contentions. *See Risner*, 2013 WL 175 8876, at *17-18.

Liberally construing the OCSPA as the Court is required to do, the undersigned finds no merit to Haas's contention that OCSPA liability arises only where a supplier has a direct contractual relationship with the individual consumer. *See Garner v. Borcherding Buick, Inc.*, 616 N.E.2d 283, 285 (Ohio Ct. App. 1992) (holding that the OCSPA does not require "privity of contract between the consumer and the defendant"). Certainly, Haas cites nothing within the text of the OCSPA requiring a direct contract with the consumer before liability can attach under the OSCPA. In fact, Ohio Rev. Code §§ 1345.02(A) and 1345.03(A) require only that that the unfair, deceptive, and/or unconscionable act or practice occur "*in connection* with a consumer transaction." *Id.* (emphasis added); *see also Temple v. Fleetwood Enters., Inc.*, 133 F. App'x 254, 266 (6th Cir. 2005) (stating that, in order to make out an OCSPA claim, plaintiffs must show the unfair, deceptive or unconscionable act or practice occurred "in *relation* to a consumer transaction"). Further, even assuming Haas's "only contact with [the Bowells] came about after the cabinets had already been installed," *see* doc. 12 at PageID 299, an unfair, deceptive, or unconscionable act or practice can, by the express terms of the OCSPA, occur "after the transaction." Ohio Rev. Code §§ 1345.02(A) and 1345.03(A).

### 3.    Unfair, Deceptive or Unconscionable Act or Practice

An "unfair or deceptive" act or practice generally consists of practices that "mislead consumers about the nature of the product [or service] they are receiving." *Risner v. Regal Marine Indus., Inc.*, 8 F. Supp. 3d 959, 997 (S.D. Ohio 2014). More generally put, a supplier's act or practice is actionable where their acts or practices are not only "at variance with the truth but . . . also concern a matter that is or is likely to be material to a consumer's decision to

purchase the product or service involved." 17 Ohio Jur. 3d *Consumer and Borrower Protection* § 17. Matters "merely incidental to the choices a consumer must make when deciding to engage in the transaction" are not actionable. *Id.*

Haas argues that the Bowells failed to sufficiently allege an unfair or deceptive act or practice because they allege no "contact or communication of any sort" between Haas and the Bowells "prior to installation of the cabinets." Doc. 10 at PageID 126. The Bowells contend that Haas committed an unfair and deceptive act or practice by not honoring warranties concerning the defects in the cabinets. *See* doc. 3 at PageID 69-72; doc. 11 at PageID 173-75.

The undersigned agrees with the Bowells and finds that Ohio law provides that "a manufacturer's failure to repair a defect covered by a warranty can constitute a violation of the [O]CSPA." *See Risner*, 2013 WL 1758876, at *16 (citing *Temple*, 133 F. App'x at 266; *Boyle v. Daimler Chrysler Corp.*, No. 2001–CA–81, 2002 WL 1881157, at *7 (Ohio App. 2 Dist. Aug. 16, 2002); *Brown v. Lyons*, 332 N.E.2d 380, 385 (Ohio Ct. C.P. 1974)). The text of the OCSPA makes clear that an unfair, deceptive, or unconscionable act can occur "*after* the transaction" and in the absence of direct dealing with the consumer. Ohio Rev. Code §§ 1345.01(C), 1345.02(A) and 1345.03(A) (emphasis added).

### 4. Statutory Agent

The Bowells also allege that Haas committed an unfair and deceptive act by failing to maintain a statutory agent with the Ohio Secretary of State, as purportedly required by Ohio Rev. Code § 1701.07(A). *See* doc. 3 at PageID 70. Even assuming, *arguendo*, that Haas was required

to maintain a statutory agent in Ohio,[5] the Bowells do not allege how such failure has any "connection with a consumer transaction" at issue in this case, *see* Ohio Rev. Code § 1345.02(A), *i.e.*, "mislead [them] about the nature of the product they are receiving[.]" *See Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 800 (Ohio 2005).

Instead, the Bowells cite an Ohio Court of Common Pleas Agreed Consent Judgment Entry and Order -- which is part of the Ohio Attorney General's Public Inspection File ("PIF") -- for the proposition that failure to maintain a statutory agent in Ohio is an automatic violation of the OCSPA. *See State ex rel. DeWine v. Heights Driving School II, Inc.*, No. CV-2010-08-5286, (Summit Co. C.C.P. Oct. 28, 2011), PIF No. 2979. The undersigned declines to conclude that failure to register a statutory agent in Ohio is, *ipso facto*, a violation of the OCSPA, and further concludes that citation to an Ohio trial court consent judgment so stating is not "dispositive or even persuasive on the issue[.]" *Lucas v. Telemarketer Calling From (407) 476-5670 & Other Tel. Numbers*, No. 1:12-CV-630, 2014 WL 1119594, at *14 (S.D. Ohio Mar. 20, 2014); *cf. Smith v. Transworld Sys., Inc.*, No. C-3-96-166, 1997 WL 1774879, at *6 (S.D. Ohio July 31, 1997) (noting that state court "consent judgments" in OCSPA cases "are of little, if any, precedential value"); *Kline v. Mortg. Elec. Sec. Sys.*, No. 3:08CV408, 2010 WL 6298271, at *8 (S.D. Ohio

---

[5]   The undersigned concludes that the Bowells fail to sufficiently allege facts supporting the contention that Haas was required to maintain a statutory agent in Ohio. The parties do not dispute that Haas is not incorporated under the laws of Ohio and, therefore, is a "foreign corporation" as that term is defined in Ohio Rev. Code § 1703.01(B). *See* doc. 11 at PageID 176-77. Unless specifically exempted, a "foreign corporation . . . shall [not] transact business in [Ohio] unless it holds an unexpired and uncanceled license to do so issued by the [S]ecretary of [S]tate" and "shall have and maintain an agent . . . upon whom process against the corporation may be served within this state." Ohio Rev. Code §§ 1703.03 and 1703.041(A). The license and the statutory agent requirements, however, do "not apply to corporations engaged in this state solely in interstate commerce[.]" Ohio Rev. Code § 1703.02. For purposes of this inquiry -- an inquiry separate from an inquiry into the Court's personal jurisdiction over Haas (an issue that has not been raised by the parties) -- "a corporation engages [solely] in interstate commerce when it contracts to sell goods it manufactured outside Ohio to firms within Ohio." *Contel Credit Corp. v. Tiger, Inc.*, 520 N.E.2d 1385, 1386-87 (Ohio Ct. App. 1987). Here, there are insufficient factual allegations to support a contention that Haas's activities in Ohio amount to more than merely engaging in interstate commerce. As a result, the Bowells fail to sufficiently allege that Haas violated Ohio law by failing to maintain a statutory agent for purposes of service.

10

Dec. 30, 2010), *report and recommendation adopted sub nom. Kline v. Mortg. Elec. Registration Sys., Inc.*, No. 3:08CV408, 2011 WL 1125346 (S.D. Ohio Mar. 25, 2011); *Gascho v. Glob. Fitness Holdings, LLC*, 918 F. Supp. 2d 708, 715 (S.D. Ohio 2013).

Based upon the lack of factual allegations asserted by the Bowells concerning the "connection" between Haas's lack of a statutory agent in Ohio and the "consumer transaction," the undersigned finds that any such claim in this regard should be dismissed.

## B.     Breach of Contract

Haas last argues that the Bowells' breach of contract claim must be dismissed because they fail to allege that an express contract exists between them and Haas. *See* doc. 10 at PageID 129. The Bowells concede the fact that no oral or written contract exists between them and Haas, but nevertheless argue that a claim for breach of an implied contract is plausible. *See* doc. 11 at PageID 178. In doing so, the Bowells do not point to any allegations in their complaint that support such a claim, and they make no specific argument -- beyond a conclusory contention -- that such a claim is plausible based upon the allegations presented. *Id.* The Bowells merely block quote case law that sets forth the principle of implied-in-fact contracts, but do so without attempting to apply such law to the circumstances presented here. *See id.*

As held by the Sixth Circuit, "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived" because "[i]t is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). "Under the circumstances, [the undersigned] conclude[s] that the plaintiffs do not seriously intend to pursue their" breach of an implied-in-fact contract claim against Haas. *See id.*

11

## IV.

Accordingly, based upon the foregoing, the undersigned **RECOMMENDS** that:

(1)    Defendant Haas's motion for partial judgment on the pleadings (doc. 10) be **GRANTED IN PART AND DENIED IN PART**;

(2)    Plaintiffs' OCSPA claims, based upon Defendant Haas's alleged failure to repair a defect covered by warranty, remain pending;

(3)    Plaintiffs' OCSPA claims, based upon Defendant Haas's failure to maintain a statutory agent in Ohio for service of process, be **DISMISSED**;

(3)    Plaintiffs' claims under Ohio Rev. Code § 4722.01, the Ohio Repair Rule, and/or for fraud and deceit be **DISMISSED**; and

(4)    Plaintiffs' claims for breach of contract and/or breach of an implied-in-fact contract be **DISMISSED.**

Insofar as Plaintiffs request leave to file an amended complaint,[6] such request is **DENIED** without prejudice to refiling.

Date:   November 9, 2016                          s/ Michael J. Newman
                                                  Michael J. Newman
                                                  United States Magistrate Judge

---

[6] Notably, the Bowells' request in this regard is not made part of a separate motion and, instead, is included briefly at the end of their memorandum in opposition to Haas's motion. *See* doc. 11 at PageID 179.  The Bowells do not state with any modicum of particularity any factual content they would otherwise add to the pleadings that would assist in avoiding dismissal of any claims. *Id*.  Accordingly, such request is denied, albeit without prejudice to filing a formal motion.

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report and Recommendation is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F), and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.  As is made clear above, this period is likewise extended to **SEVENTEEN** days if service of the objections is made pursuant to Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).